ACTION of ejectment for the undivided eighth part of three several tracts of land comprising about three hundred and seventy acres in Baltimore Hundred. The claim of the plaintiffs was in right of Margaret J. Melvin, the wife, as one of the eight children and heirs at law of Esther Timmons, deceased, who died seized and possessed of the premises in fee, and whose title to the same at the time of her death was not in dispute between the parties to the action; but the plaintiffs claimed that she died intestate as to the fee thereof, whilst the defence was under the following instrument purporting to be her last will and testament and which had been formally admitted to probate and allowed as such, before the Register of Wills for Sussex County. "I Esther Timmons of Baltimore Hundred in Sussex County, considering the uncertainty of this mortal life and being of sound mind and memory, do make and publish this my last will and testament in manner and form following, that is to say: Item, I give and devise to my daughter Fanny Timmons all that messuage or tenement of land which is called the Little Savannah where Sarah Halloway now lives to have and to hold during her life-time, up to a certain road leading from the School House to Jones' Road, the above road that I have described I make my line between my two farms, and after the death of my daughter Fanny Timmons, I will that that farm shall come back to the home farm again. Item, I will that my home farm where I now live never to be sold, but after my death to be rented out and the rents to be equally divided between my six sons and daughters here named, Patty Davis, Elizabeth Davis, Nancy Bailey, Sarah Halloway, Isaac Timmons and Stephen Timmons, also after the death of my daughter Fanny Timmons I will that farm never to be sold, but rented out and the rents to be equally divided between my six sons and daughters above named, them and their heirs from generation to generation forever. Item, my will and desire is that my daughter Fanny will let my two daughters, Sarah Halloway and Elizabeth *Page 529 
Davis (widow) live with her during their life-time, and further I will that when any of my grand-children shall become heirs to the rents of my farm, that Hester H. Timmons, daughter of James H. Timmons and Hester Timmons, daughter of Lemuel Timmons, shall have an equal share with them their life-time, also I will the sum of fifty dollars to be paid by my administrators, to my daughter Rebecca Carey without interest after my honest debts are paid and if there is not enough of my personal property to pay it after my debts are paid, I will it to be paid out of the rents of my farm: And further I will that my grand-son Dennard Davis carries on the farm for two years and has the piece of new ground according to the contract, also Jacob Halloway my grand-son is to have an interest in the new ground with Dennard, and further I will that my grand-son Dennard Davis has the use of my young horse for the farm for two years, then I give the horse to my son Stephen Timmons; and further I will a certain piece of cedar swamp lying and being in Baltimore Hundred aforesaid, never to be sold, but to be kept for the use of rails for the said above mentioned farms. I will that the timber on my lands shall not be destroyed and only used for the support of the two farms. Item, and in case my daughter Margaret Melvin should live longer than her husband, I will that she shall come in after the death of her husband, for an equal share of the rents of my farm with the rest of my children as above mentioned." It also contained several legacies and the following residuary clause, "I will that the residue of my personal property not herein mentioned, to be appraised and sold to the best advantage and to be paid towards my honest debts and if my personal property does not pay my debts, I will the balance to be paid out of the rents of my farm."
The first rule in regard to the construction of a will is to ascertain the meaning and intention of the testator of it, and to give effect to that meaning and intention, if it is not inconsistent with the rules and principles of law applicable to it; but it is also another rule of law, which is not to be overlooked in this connection, that the heirs at law are not to be disinherited, or debarred of their right to claim his lands by operation of law, or by descent and inheritance, as it is usually termed, without express words, or a clear and certain intent apparent upon the face of the will. For in order to make such a devise of real estate as will disinherit an heir at law, or deprive him of his right to inherit it, independent of the will, such an intention must appear, or be clearly indicated in it, as is *Page 537 
sufficient to satisfy the mind and conscience of the court in pronouncing it such. If it is barely problematical, or is doubtful, or uncertain, the rule of law must have its course and control the disposition of the estate, notwithstanding the provisions of the will.Bowes v. Blackett, Cowp. 240. Because it is a rule of universal application in the construction of wills that whenever there is an irreconcilable uncertainty or repugnancy in the dispositions made by a testator of his real estate, the title of the heirs at law shall be preferred to all others; because where a court cannot find words in a will, which either expressly, or by necessary implication, denote the testator's intention beyond the possibility of a doubt, the rules of law directing descents, which are certain, must prevail and can never be superseded by an uncertain devise. Pow. on Dev.
21 Law Libr. 204. Many of the secondary or subordinate provisions contained in the will before them, were vague, confused and uncertain in their meaning and the court had not been able when taken together to ascertain and determine with entire certainty or satisfaction, their exact meaning, or the precise object, or intention of the testatrix in making them. And the same remark may be made in regard to what appears to be the main purposes of the devises in question. But taking the whole will and considering all its provisions together, the main design and intention which she had in view unquestionably was that neither the devisees named, nor her heirs at law should ever have the right or power to sell or alienate the lands devised, but that the same should be forever rented out for the benefit of the devisees mentioned and their *Page 538 
descendants, the rents thereof to be equally divided forever between them. The will, however, contains in terms no express devise of the lands to them, or to any one else, or of the rents and profits even, and there was consequently no devise of either to them, or to any other person, unless it could be shown that what is said by way of direction in regard to the division of the rents between the devises named and their descendants, constitute a devise in law of the lands themselves to them, by implication or legal construction but which we think has not been done; and we are therefore of the opinion, for both of these reasons, that the devises in question are inoperative and void as against the claim of the plaintiffs who are seeking to recover the one undivided eighth part of the lands and premises referred to in right of the wife, Margaret Melvin, as one of the children and heirs at law of the testatrix, and that they are consequently entitled to recover.
 The plaintiff had a verdict.